## BOOTH v. TEXAS BUILDERS' SUPPLY CO.
### No. 2205.

Court of Civil Appeals of Texas. Beaumont. March 3, 1932.

Rehearing Denied March 16, 1932.

Conley, Renfro & Keen, of Beaumont, for appellant.

Minor & Lipscomb and C. E. Pool, all of Beaumont, for appellee.

WALKER, J.

Under a contract between Fannin Investment Company and T. E. Danziger, doing business as Texas Builders' Supply Company, appellant J. T. Booth installed or "built up" a roof for the Fannin Investment Company on certain property owned by it at Jefferson and Fannin streets, Beaumont. Also, as part of the contract, appellant did certain other work for Fannin Investment Company, such as repairing the ventilator, skylights, and other metal work on this building. The contract price for all the work done by appellant was $1,260, which was paid to Danziger by check and indorsed by him to appellant, who cashed the check and appropriated all its proceeds. All the relation Danziger had with the contract after its execution was to furnish appellant, at wholesale prices, the material used in building up the roof. The evidence raised the issue that Danziger, in negotiating with appellant to install the roof, told him it was to be a five-year roof, meaning that the Fannin Investment Company would expect a five-year guaranty on the roof, and that appellant assented to this condition. After the roof was put on and the check in payment of its cost was in Danziger's possession, in settling with Danziger the issue was raised that as a condition of the settlement appellant agreed that Danziger should execute a five-year written guaranty to Fannin Investment Company. On this issue Danziger testified that he told appellant that "Mr. Baggese is going to want a five year guaranty," and that appellant replied: "Well give it to him, I will take care of the roof. You know I'm not going to fall down on it. I will repair the roof if it leaks. I will take care of it." On the 17th of July, 1926, the day of settlement, Danziger gave to Fannin Investment Company the following written guaranty:

"Referring to built-up roof which we have applied on your property at Jefferson & Fannin Sts., this city, we hereby guarantee the material and workmanship for a period of five years. In case of any leaks we assume all responsibility ·to repair these leaks for the period of time specified.

"This guarantee is effective beginning this date, and should not be construed to cover damage resulting from storms or other acts beyond our control."

The roof proved defective, and for several months. appellant made good the conditions of the guaranty, but, as the repairs made by him did not stop the leaks, and as he contended that the repairs made by him had consumed all the profit he had under the contract, he refused to make further repairs. After appellant and Danziger refused to repair the roof, Fannin Investment Company had the work done on competitive bids, under three separate contracts for different sections of the roof, at a cost of $857. This suit was by Fannin Investment Company against Danziger to recover that amount, on allegations of the execution of the contract between it and Danziger and of execution by him of the written guaranty. Danziger answered admitting, in effect, the facts pleaded by the plaintiff and by cross-action against appellant, praying for judgment against him, on allegations of the facts stated above for any sum in which he might be found liable. Appellant's answer was sufficient to raise the issues presented by the appeal. On conclusion of the evidence the trial court instructed a verdict in favor of the Fannin Investment Company against Danziger for the $857 and sent to the jury the issues between Danziger and appellant by the following questions, answered as indicated:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant, J. T. Booth, agreed to protect the defendant T. E. Danziger, against loss by reason of the execution of the guaranty? Answer yes or no as you find the facts to be." The jury answered: "Yes."

"If you have answered Special Issue No. 1 no, then you need not answer the following special issue; but if you have answered Special Issue No. 1 yes, then answer:

"Special Issue No. 2. Do you find from a preponderance of the evidence that the defendant, T. E. Danziger, in executing the guaranty in question relied on the promise of the defendant, J. T. Booth, to protect the defendant, T. E. Danziger, against liability or loss thereon? Answer yes or no as you find the facts to be." The jury answered: "Yes."

The appeal is by appellant Booth, who presents the following propositions of error:

■ First. He says on the undisputed evidence the contract pleaded against him was in violation of the statute of frauds, in that it was an oral contract, not to be performed within a year, and was a promise to answer for the debt, default, or miscarriage of Danziger. Appellant is wrong in this contention. The evidence clearly raised the issue that the written guaranty was appellant's guaranty executed in his name and on his behalf by Danziger, as his agent. Appellant erroneously insists that the issue of agency was waived because not submitted to the jury as a separate issue. As submitted, agency was merely evidentiary, or, if an essential element of Danziger's recovery, it was necessarily found by the trial court in support of his judgment. On this statement it follows that the guaranty, as executed, was not a promise on appellant's part to answer for a debt, default, or miscarriage by Danziger, but an original promise by him.

■ Second. Appellant is clearly wrong in his contention that the guaranty was without consideration. Under all the testimony appellant received all the contract price for installing the roof, and the evidence raised the issue that the guaranty was an essential element of the contract.

■ Third. The court committed reversible error in instructing a verdict for the $857 sued for and in rendering judgment against appellant in favor of Danziger for this sum. The evidence raised the issue of necessity so far as repairing leaks in the roof was concerned, but there was no evidence that all of the work done in repairing the roof was necessary to repair the leaks, nor was there any evidence as to the reasonable cost of repairing the leaks. Under the evidence Fannin Investment Company, by three separate contracts, had its roof rebuilt and did not have the work done within the terms of the guaranty; that is, to repair the "leaks for the period of time specified." Thus, the witness Guy Cheeseman, representing Gulf Coast Roofing Company, testified that he did a part of the repairing for Fannin Investment Company and was paid $372 for his work. He testified: "As I recall it, we were asked to felt that half of the building, without reference to leaks." Clearly, all the work thus done by Mr. Cheeseman was not protected by the guaranty. The full measure of recovery by Fannin Investment Company was the reasonable and necessary cost incurred by it in protecting its roof from leaks within the terms of the guaranty for the period of time extending from July 17, 1926, to July 17, 1931. The rule is thus stated in 17 C. J. 847: "A plaintiff is not to be put in better position by the recovery of damages for the breach of a contract than he would have been if there had been performance."

It follows that the judgment as against both Danziger and appellant should be reversed, and the cause remanded for a new trial.

Reversed and remanded.